**People of GUAM, Petitioner,**

v.

**Benny Toves GUERRERO, Respondent.**

**No. 00–71247.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Filed May 28, 2002.

Vincente C. Pangelinan and Senator Mark C. Charaurous.

Before BEEZER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

## OPINION

O'SCANNLAIN, Circuit Judge.

We must decide whether the Supreme Court of Guam may interpret the Territory of Guam's "Bill of Rights," which is a federal statute, to allow greater religious freedom than that provided by the First Amendment to the federal Constitution.

### I

Tricia R.S. Ada, argued the cause for petitioner; Robert H. Kono, Angela M. Borzachillo, Office of the Guam Attorney General, Hagåtña, Guam, were on the briefs.

Nelson Tebbe, ACLU Drug Litigation Project, New Haven, CT, argued the cause for respondent; Graham Boyd, ACLU Drug Policy Litigation Project, New Haven, CT, and Daniel N. Abrahamson, The Lindesmith Center, San Francisco, CA, were on the brief.

Julie M. Carpenter and Nory Miller, Jenner & Block, Washington, DC, were on the brief for amicus curiae The DKT Liberty Project, Dr. John P. Homiak, and Prof. Carole D. Yawney.

David T. Goldberg, New York, NY, was on the brief for amicus curiae Senator

Police officers of the Territory of Guam arrested Benny Toves Guerrero [1] at the Guam International Airport after they found five ounces of marijuana and ten grams of marijuana seeds in his belongings. He was duly indicted under Guam's statutes criminalizing the importation of controlled substances. 9 Guam Code Ann. §§ 67.23(d)(10), 67.89(a), 80.33.7. Guerrero moved to dismiss his indictment on the ground that the statutes violated his right freely to exercise his religion—Rastafarianism—under the Organic Act of Guam ("Organic Act"), 48 U.S.C. §§ 1421 et seq., and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb et seq.

The Superior Court of Guam found, and the government does not dispute, that Rastafarianism is a legitimate religion [2] of

---

1. Guerrero has chosen to use his Rastafarian name, Iyah Ben Makahna, for over the past 20 years. Because the case caption uses his birth name, however, this opinion will also.

2. We have previously acknowledged that Rastafarianism is a legitimate religion, in which marijuana plays a necessary and central role.

*See United States v. Bauer,* 84 F.3d 1549, 1556 (9th Cir.1996) (Rastafarianism "is among the 1,558 religious groups sufficiently stable and distinctive to be identified as one of the existing religions in this country.... Functionally, marijuana ... operates as a sacrament with the power to raise the partakers above the

which Guerrero is a legitimate member. *People v. Guerrero,* No. CF0001–91, at 4 (Sup.Ct. Guam July 23, 1999). It also found that marijuana use is sacramental in the practice of that religion. *Id.* Using RFRA's standard—namely, a law of general applicability that substantially burdens the free exercise of religion is invalid unless the government demonstrates that the law is the least restrictive means of vindicating a compelling government interest—the trial court found that the government had alleged neither a compelling interest nor that its drug laws were the least restrictive means of carrying out their purpose. *Id.* at 5–6. As such, the trial court held that the importation statute, as applied to Guerrero, violated both RFRA[3] and the Free Exercise Clause of the Organic Act, 48 U.S.C. § 1421b(a).

The Supreme Court of Guam affirmed based solely on its interpretation of the Organic Act. While it discussed whether RFRA was constitutional as applied to Guam as a federal instrumentality, its decision was based on its own interpretation of § 1421b(a). *People v. Guerrero,* 2000 Guam 26, 2000 WL 1299635, at *6 (2000). The Supreme Court of Guam construed the Organic Act's Free Exercise Clause, § 1421b(a), as providing the level of protection found in RFRA and prior U.S. Supreme Court decisions:[4] "the government must demonstrate that some compelling state interest justifies the infringement [that substantially burdens religious exercise] and that the least restrictive means are used to accomplish that objective." *Id.* at *3.

Applying this compelling interest test, the Supreme Court of Guam held that Guam's controlled substance statute substantially burdened Guerrero's right freely to exercise his religion. *Id.* at *6. It went on to conclude that the government had not demonstrated that its statute was necessary for the pursuit of a compelling state interest: "The issue then is whether some compelling government interest exists and whether the least restrictive means of obtaining that objective are used. No evidence on this score was presented.... [T]his court is unable to make the evaluation of whether a compelling state interest is embodied in the instant statute or whether that interest is achieved by the least restrictive means." *Id.*

The Guam Supreme Court thus affirmed the trial court and held that Guam's prosecution of Guerrero violated his right freely to exercise his religion as guaranteed by § 1421b(a) of the Organic Act. We granted Guam's timely petition for a writ of certiorari pursuant to 48 U.S.C. § 1424–2.

## II

█ Because we are reviewing a decision of a territorial supreme court that interpreted a federal statute, our standard of review is de novo. *Gutierrez v. Pangelinan,* 276 F.3d 539, 546–47 (9th Cir.2002). We recognize that on matters of local concern, appellate courts apply a highly deferential standard of review. *See, e.g., De Castro v. Board of Comm'rs,* 322 U.S. 451, 454, 64 S.Ct. 1121, 88 L.Ed. 1384 (1944) (declining to overrule a territorial court on matters of local concern absent "clear" or "manifest" error or an "inescapably

---

mundane and to enhance their spiritual unity.").

**3.** The trial court held that RFRA was constitutional as applied to Guam because the territory is a federal instrumentality. *Guerrero,* No. CF0001–91, at 4–5.

**4.** *See Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). *Sherbert's* test was later rejected for the neutral rules of general applicability approach in *Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). *See infra.*

wrong" interpretation) (quoting *Sancho v. Texas Co.*, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401 (1940)); *EIE Guam Corp. v. Supreme Court of Guam*, 191 F.3d 1123, 1127 (9th Cir.1999) ("Although Congress certainly has given us jurisdiction to review issues of local Guam law, we hesitate to use this authority where, on the merits, the Guam Supreme Court appears to have construed a Guam statute reasonably and fairly."). Nonetheless, despite the fact that we are dealing with Guam's "Bill of Rights," we cannot ignore the fact that § 1421b(a) is a federal statute dealing with an issue of federal constitutional import, not a local law. As such, we employ a de novo standard of review.

### III

The United States formally acquired Guam from Spain in 1899 after the Spanish–American War, and, with the exception of a three-year Japanese occupation during World War II, it has remained in the United States's possession since that time. Until 1950, Guam was controlled by the U.S. Navy, with vast authority wielded by an appointed governor.

Guam remains an unincorporated territory of the United States, 48 U.S.C. § 1421a, subject to the plenary power of Congress. *Guam v. Okada*, 694 F.2d 565, 568 (9th Cir.1982).[5] Congress has the power to legislate directly for Guam or to establish a government for Guam subject to congressional control, and except as Congress may determine, Guam has no inherent right to govern itself. *Id.* With the exception of certain "fundamental rights," federal constitutional rights do not automatically apply to unincorporated territories. *Balzac v. Porto Rico*, 258 U.S. 298, 312–13, 42 S.Ct. 343, 66 L.Ed. 627 (1922); *Dorr v. United States*, 195 U.S. 138, 147, 24 S.Ct. 808, 49 L.Ed. 128 (1904). An act of Congress is required to extend constitutional rights to the inhabitants of unincorporated territories. *Pugh v. United States*, 212 F.2d 761, 762–63 (9th Cir. 1954).

In response to renewed petitions of Guam's inhabitants, Congress enacted the Organic Act of 1950, 48 U.S.C. § 1421 *et seq.*, which, *inter alia*, established a "Bill of Rights" modeled after the Bill of Rights in the federal Constitution, 48 U.S.C. § 1421b.[6] The language of the Free Exercise Clause of the Organic Act, 48 U.S.C. § 1421b(a), is virtually identical to its federal counterpart: "No law shall be enacted in Guam respecting an establishment of religion or prohibiting the free exercise thereof...." *Id.*

Later, in 1968, Congress enacted 48 U.S.C. § 1421b(u), known as the Mink Amendment, which extended certain constitutional rights to Guam "to the extent that they [had] not been previously extended" and provided that those rights "*shall have the same force and effect* [in Guam] as in the United States or in any State of the United States." *Id.* (emphasis added).[7]

---

**5.** Since 1972, Guam has also been represented by an elected, non-voting Delegate in the U.S. House of Representatives. 48 U.S.C. § 1711.

**6.** Guam's "Bill of Rights" is patterned after, but not identical to, the federal Bill of Rights. For example, in § 1421b there is no equivalent to the Second Amendment, Fifth Amendment grand jury indictment guarantee, or the Sixth and Seventh Amendment rights to a trial by jury. Furthermore, Guam's "Bill of Rights" contains provisions not found in the federal Bill of Rights. *See, e.g.*, § 1421(n) (proscribing discrimination on the basis of race, language, or religion); § 1421b(q) (prohibiting employment of children under the age of fourteen years in any occupation injurious to health); § 1421(r) (requiring compulsory education for all children between the ages of six and sixteen years).

**7.** The Mink Amendment, subsection (u), extended the following federal constitutional rights to Guam: "article I, section 9, clauses 2 and 3; article IV, section 1 and section 2,

The thorny question we must decide is whether § 1421b(a) is analogous to the free exercise provisions found in many state constitutions that state supreme courts are free to interpret as providing more protection than that given by the federal constitution. Indeed, many states have in fact provided more protection to religious freedom, even when their state free exercise clause is similarly or identically worded to its federal counterpart.[8] Therefore, we must decide whether the rights established in the federal Constitution are a ceiling beyond which the Supreme Court of Guam cannot exceed when it is interpreting its "Bill of Rights."

### A

■ The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. In *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), Smith was a member of the Native American Church who ingested peyote for sacramental purposes at a church ceremony. As a result, Smith's employer, a private drug rehabilitation organization, fired him. When he applied for unemployment compensation, the state agency denied his application because a state statute disqualified individuals who had been fired for work-related "misconduct." *Id.* at 874, 110 S.Ct. 1595. Smith sued, arguing that the denial of unemployment compensation burdened his First Amendment right to exercise his religion freely. The Supreme Court declined to apply *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), which required laws that substantially burden the free exercise of religion to be supported by a compelling government interest, and instead adopted a "neutral rules of general applicability" test. *Id.* at 884, 110 S.Ct. 1595. The Court held that neutral, generally applicable laws may be applied to religious practices, even when not supported by a compelling government interest. *Id.* at 884–85, 110 S.Ct. 1595.

The parallels of *Smith* to this case are striking. Like *Smith*, Guerrero used a controlled substance in the practice of his religion,[9] and Guam has a neutral, generally applicable law proscribing the importation of such controlled substance. Under *Smith*, then, Guam may constitutionally

---

clause 1; the first to ninth amendments inclusive; the thirteenth amendment; the second sentence of section 1 of the fourteenth amendment; and the fifteenth and nineteenth amendments." 48 U.S.C. § 1421b(u).

8. *See, e.g., Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 280–81 (Alaska 1994) (per curiam) (interpreting the state constitution's Free Exercise Clause to require a version of the more protective compelling interest test); *Attorney General v. Desilets*, 418 Mass. 316, 636 N.E.2d 233, 235–36 (1994) (same); *Hill–Murray Fed'n of Teachers v. Hill–Murray High Sch.*, 487 N.W.2d 857, 864 (Minn.1992) (same); *Open Door Baptist Church v. Clark County*, 140 Wash.2d 143, 995 P.2d 33, 38 (2000) (en banc) (same); *State v. Miller*, 202 Wis.2d 56, 549 N.W.2d 235, 239–41 (1996) (same). *See generally City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 293, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (holding that "a state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution, or to reject the mode of analysis used by this Court in favor of a different analysis of its corresponding constitutional guarantee").

9. We do not pass on the importance of marijuana to Guerrero's religion. *See Smith*, 494 U.S. at 887, 110 S.Ct. 1595 ("Judging the centrality of different religious practices is akin to the unacceptable 'business of evaluating the relative merits of differing religious claims.'" (quoting *United States v. Lee*, 455 U.S. 252, 263 n. 2, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (Stevens, J. concurring)))

punish Guerrero for importing a controlled substance, even if doing so substantially burdens his ability to practice his religion.

## B

Our inquiry does not end at *Smith*, however, because we must decide whether the Supreme Court of Guam was within its authority to interpret § 1421b(a) as providing more protection for religious freedom than its federal counterpart. If so, then we allow the territorial court's decision to stand. If not, then we must reverse, as *Smith* would be the applicable standard.

The Supreme Court of Guam interpreted § 1421b(a) to provide the level of free exercise protection found in the U.S. Supreme Court's *Sherbert* decision—namely, a law that substantially burdens the free exercise of religion must be justified by a compelling government interest and must burden no more religious exercise than necessary to achieve that interest. *Sherbert*, 374 U.S. at 403, 83 S.Ct. 1790. Applying this standard, the Supreme Court of Guam held that Guam had not shown a compelling government interest served by its statute forbidding the importation of a controlled substance or that it was properly tailored. Absent such showing, it reasoned, Guam could not prosecute Guerrero for importing a controlled substance because it would burden his right of free exercise found in § 1421b(a).

█ Guerrero argues that the Supreme Court of Guam was well within its authority to interpret § 1421b(a) differently than the U.S. Supreme Court's interpretation of the federal Free Exercise Clause. His argument is premised on the structure of § 1421b itself, which, he believes, provides two layers of constitutional rights—a territorial bill of rights, subject to final construction by the Supreme Court of Guam, and a federal Bill of Rights, subject to final construction by the U.S. Supreme Court. To Guerrero, subsection (u) of the Mink Amendment extends to the people of Guam rights found in the *federal* constitution—it is a floor below which the Guam legislature cannot dip—whereas subsection (a) is analogous to a free exercise clause found in a state constitution that the Supreme Court of Guam may interpret more broadly. See *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1370 (9th Cir.1992) (holding that subsection (u) prevented Guam from unconstitutionally hindering a woman's substantive due process right to choose to have an abortion).[10] Therefore, he argues, while subsection (u)'s extension of federal First Amendment rights is bound by the interpretation the U.S. Supreme Court gives the Free Exercise Clause, subsection (a) is not so limited, and the Supreme Court of Guam can interpret it as providing religious exercise rights equal to or greater than those in the federal Constitution.

█ Of course, Guam is not a state, has no locally adopted constitution, and its "Bill of Rights" was passed not by its citizens, but rather by Congress. While § 1421b might function as a constitution, *Haeuser v. Dep't of Law*, 97 F.3d 1152, 1156 (9th Cir.1996) ("The Organic Act

---

10. *Ada* is consistent with Guerrero's argument because there Guam attempted unconstitutionally to limit a woman's right to choose to have an abortion, contravening the holding of *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Through subsection (u), *Ada* provided, Guam's citizens enjoy the due process rights found in the Fourteenth Amendment, including the substantive due process right to choose to have an abortion. *Ada* held that because of subsection (u), Guam could not *dip below* the level of protection provided by the Fourteenth Amendment to outlaw almost all abortions. 962 F.2d at 1370. Of course, *Ada* says nothing about Guam's ability to provide *more* protection, which is what the Guam Supreme Court did here.

serves the function of a constitution for Guam."), it remains quite unlike a constitution of a sovereign State. Guam is a federal instrumentality, enjoying only those rights conferred to it by Congress, and its "Bill of Rights" is a federal statute. Not even a sovereign State may interpret a federal statute or constitutional provision in a way contrary to the interpretation given it by the U.S. Supreme Court. We are powerless to delegate authority to the Supreme Court of Guam to interpret matters of federal law in a manner other than that provided by the federal judiciary.

This principle is not newly minted. As far back as 1904, the U.S. Supreme Court recognized that local courts in the Philippines, which was then under the control of a U.S. military government, could not interpret the double jeopardy clause in the statutory bill of rights enacted by Congress for the Philippines differently than the construction given by the U.S. Supreme Court to its analogous provision in the Fifth Amendment of the federal Constitution. *Kepner v. United States*, 195 U.S. 100, 123–24, 24 S.Ct. 797, 49 L.Ed. 114 (1904).

The Court said:

These words [in the Philippines's statutory bill of rights] are not strange to the American lawyer or student of constitutional history. They are the familiar language of the Bill of Rights, slightly changed in form, but not in substance, as found in the first nine amendments to the Constitution....

. . . .

How can it be successfully maintained that these expressions of fundamental rights, which have been the subject of frequent adjudication in the courts of this country, and the maintenance of which has been ever deemed essential to our government, could be used by Congress *in any other sense*

than that which has been placed upon them in construing the instrument from which they were taken?

*Id.* (emphasis added).

The U.S. Supreme Court reaffirmed this principle only six years later in *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), holding that the provision of the Philippines's statutory bill of rights that prohibited the infliction of cruel and unusual punishment must have the same meaning as the Eighth Amendment of the federal Constitution. *Id.* at 367, 30 S.Ct. 544; *see also United States v. Husband R.*, 453 F.2d 1054, 1058 (5th Cir.1971) (holding that the "statutory bill of rights enacted by Congress for an unincorporated territory such as the Canal Zone is to be given the same construction as that accorded the equivalent provisions of the Constitution"); *South Porto Rico Sugar Co. v. Buscaglia*, 154 F.2d 96, 100 (1st Cir.1946) ("When Congress by the Organic Act enacted for Puerto Rico provisions similar to those contained in our 'Bill of Rights' it intended them to have the same purport as the like provisions of our Constitution.").

This principle was implicit in our decision in *Ada*, where we held that the Fourteenth Amendment's due process guarantee applied to Guam with the "same force and effect" as it has in the United States or the several States. 962 F.2d at 1370. While we recognize that *Kepner, Weems, Husband R., Buscaglia,* and *Ada* involved situations where the local territorial court interpreted its statutory bill of rights to provide *less* protection of individual rights than that found in the federal Constitution, whereas here the Supreme Court of Guam interpreted its "Bill of Rights" to provide *greater* protection of individual rights, we nevertheless find their principle controlling. These cases teach us that a territorial court lacks the authority to interpret a

federal statute or federal constitutional provision contrary to the interpretation the U.S. Supreme Court has given it.[11]

As such, it was error for the Supreme Court of Guam to conclude that "[d]espite the similarity of the two provisions, this court can reach its own conclusions on the scope of the protections of section 1421b(a) and may provide broader rights than those which have been interpreted by federal courts under the United States Constitution." *Guerrero*, 2000 WL 1299635, at *6. Because the *Smith* standard applies, we must reverse, having been persuaded that Guam's statute proscribing the importation of a controlled substance is a neutral rule of general applicability that may constitutionally be applied to Guerrero under § 1421b(a).

## IV

Because we conclude that the Supreme Court of Guam exceeded its authority by

interpreting § 1421b(a) as providing rights of free exercise greater than those found in the federal Constitution, we next consider whether RFRA, which provides a level of protection to religious exercise beyond that which the First Amendment requires, is constitutional as applied to Guam, a federal instrumentality.[12]

## A

RFRA requires that a law that works a substantial burden on an individual's ability freely to exercise his religion must be justified by a compelling government interest and achieve that interest by burdening as little religious freedom as possible. 42 U.S.C. § 2000bb 1(b).[13] In essence, RFRA re-establishes the *Sherbert* standard that the U.S. Supreme Court supplanted in *Smith*.[14] Congress itself said as much, declaring its purpose in enacting RFRA:

**11.** Guerrero argues that our reading will render provisions of the Organic Act's "Bill of Rights" redundant and superfluous. If subsection (u) was merely extending rights that had *not previously been extended,* and subsection (a) *already provided the federal level of free exercise protection,* why did Congress mention the First Amendment *again* in subsection (u)? Thus, he argues, the free exercise portions of subsections (a) and (u) must be subject to different interpretations. Or, put differently, Congress provided Guam two layers of religious protection, one federal and one subject to local interpretation that cannot fall beneath the floor of federally protected rights. While Guerrero's reading is not unreasonable, we find that the interplay of subsections (a) and (u) is less convoluted. Had Congress wanted to add a *separate layer of constitutional protections,* simpler language would have sufficed, for example, "in addition" or "also." In any case, subsection (u) adds only those provisions *not already extended.* Therefore, if a provision had been extended, like free exercise of religion, it was not duplicated by subsection (u).

**12.** Despite discussing the constitutionality of RFRA as applied to Guam, the Supreme

Court of Guam based its decision on its interpretation of § 1421b(a). Nevertheless, we address the RFRA question because it is a legal question of constitutional interpretation that was presented to both the Supreme and Superior Court of Guam, the latter deciding that RFRA was constitutional as applied to Guam, *Guerrero,* No. 0001–91, at 4–5, and the former engaging in an analysis of the issue, *Guerrero,* 2000 WL 1299635, at *4–6.

**13.** 42 U.S.C. § 2000bb 1(b) provides in full:

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest;

(2) is the least restrictive means of furthering that compelling governmental interest.

**14.** Indeed, as the U.S. Supreme Court noted, "Congress enacted RFRA in direct response to the Court's decision in [*Smith* ]." *City of Boerne v. Flores,* 521 U.S. 507, 513, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

[T]o restore the compelling interest test as set forth in *Sherbert v. Verner* ... and to guarantee its application in all cases where free exercise of religion is substantially burdened; and ... to provide a claim or defense to persons whose religious exercise is substantially burdened by government. 42 U.S.C. § 2000bb(b).

This is essentially the same standard that the Supreme Court of Guam applied in interpreting § 1421b(a) of the Organic Act, which, it held, the government could not meet. Guerrero asserts that RFRA is not only constitutional as applied to Guam, but also that Guam's drug statute created a substantial burden on his ability freely to exercise his religion that was unsupported by a compelling government interest.

### B

The U.S. Supreme Court declared RFRA unconstitutional as applied to the States because Congress exceeded its remedial authority under section 5 of the Fourteenth Amendment.[15] *City of Boerne v. Flores*, 521 U.S. 507, 532, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Congress's enforcement power under the Fourteenth Amendment is limited to remedial or preventive legislation that enforces substantive provisions of the Fourteenth Amendment. *Id.* at 519, 117 S.Ct. 2157. *Boerne* held that RFRA was so out of proportion to any substantive constitutional violation that it could not be considered remedial or preventive legislation. *Id.* at 532–34, 117 S.Ct. 2157. Had the Court not found RFRA unconstitutional as applied to the States, it would have effectively allowed Congress to "determine what constitutes a constitutional violation." *Id.* at 519, 117 S.Ct. 2157.

Of course, Congress uses its enumerated powers in Article I, not its Fourteenth Amendment enforcement authority, when it regulates for the federal sphere. Therefore, *Boerne* does not speak to the question before us. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir.2000) ("We have held, along with most other courts, that the Supreme Court invalidated RFRA only as applied to state and local law."), *cert. denied*, 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 373 (2001); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 832 (9th Cir.1999) ("Congress ... does not enact legislation regulating the *federal* government pursuant to section 5 of the Fourteenth Amendment; Congress acts under that section only when regulating the conduct of the states.") (emphasis in original); *see also Kikumura v. Hurley*, 242 F.3d 950, 958 (10th Cir.2001) (holding *Boerne* inapplicable to instances where RFRA was not being applied to States); *Christians v. Crystal Evangelical Free Church (In re Young)*, 141 F.3d 854, 858–59 (8th Cir. 1998) (same).

Nevertheless, Guam argues that *Boerne's* sweeping language and the Court's decision in *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), together imply that RFRA is unconstitutional per se as a violation of separation of powers. Indeed, some portions of *Boerne* discuss Congress's attempt to work "a substantive

---

**15.** The Fourteenth Amendment provides, in relevant part:

Section 1.... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

....

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV, §§ 1, 5.

change in constitutional protections" by enacting RFRA, 521 U.S. at 532, 117 S.Ct. 2157, and in so doing contradicted "vital principles necessary to maintain separation of powers and the federal balance." *Id.* at 536, 117 S.Ct. 2157. Essentially, the Court in *Boerne* asserted its power to say what the Constitution means, and Congress cannot substantively alter the Court's reading. However, its discussion of the separation of powers doctrine was entirely within the framework of its section 5 analysis—not an independent rationale. *See Sutton,* 192 F.3d at 833 ("Defendant is correct that the Court in *City of Boerne* mentioned separation-of-powers principles, but is incorrect that those principles served as an independent basis for invalidating RFRA as applied to the local and state law at issue in the case. The Court mentioned those principles only upon concluding that Congress did not 'act[ ] within its sphere of power and responsibilities.'" (quoting *Boerne,* 521 U.S. at 535, 117 S.Ct. 2157)).

In *Dickerson,* the Court again rejected Congress's reading of the Constitution, there the Fifth Amendment right against self-incrimination. The Court found unconstitutional a federal statute passed after *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that reinstated the pre-*Miranda,* less-protective voluntariness test. *Dickerson* held that "*Miranda,* being a constitutional decision of this Court, may not be in effect overruled by an Act of Congress." 530

U.S. at 432, 120 S.Ct. 2326. *Dickerson* relied on *Boerne* for the proposition that Congress could not usurp the U.S. Supreme Court's judicial function: "Congress may not legislatively supercede our decisions interpreting and applying the Constitution." *Dickerson,* 530 U.S. at 437, 120 S.Ct. 2326.[16]

Here, Guam argues that the same rationale should apply to RFRA, even when applied to federal instrumentalities, because RFRA still effects a substantive change in a constitutional right and, in *Smith,* supplants a constitutional interpretation of the U.S. Supreme Court. We decline to read *Boerne* and *Dickerson* so broadly and, consistent with *Sutton,* hold that *Boerne* does not control our analysis.

## C

■■■ We have not definitively held RFRA constitutional as applied in the federal realm.[17] We have assumed, without deciding, that it is. *See Worldwide Church,* 227 F.3d at 1120; *Sutton,* 192 F.3d at 833–34. Congress derives its ability to protect the free exercise of religion from its plenary authority found in Article I of the Constitution; it can carve out a religious exemption from otherwise neutral, generally applicable laws based on its power to enact the underlying statute in the first place. *See, e.g., Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints v. Amos,* 483 U.S. 327,

**16.** We note that in *Dickerson,* Congress passed a statute that sought to *remove* constitutional protection, while RFRA seeks to provide *additional* protection. As the Eighth Circuit noted,

Congress has often provided statutory protection of individual liberties that exceed the Supreme Court's interpretation of constitutional protections. . . .

. . . .

The key to the separation of powers issue . . . is thus not whether Congress disagreed

with the Supreme Court's constitutional analysis, but whether Congress acted beyond the scope of its constitutional authority in applying RFRA to federal law. *Christians,* 141 F.3d at 860.

**17.** We have held, however, that application of RFRA to the federal government is severable from its unconstitutional application to the States. *Sutton,* 192 F.3d at 833 n. 3; *see also Kikumura,* 242 F.3d at 959–60.

107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (upholding statutory exemption from anti-discrimination laws for religious organizations that make religiously-based employment decisions); *Gillette v. United States,* 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (upholding statutory protection from draft laws for conscientious objectors).[18]

The Tenth and the Eighth Circuits have upheld Congress's Article I power to enact RFRA for the *federal* realm. *Kikumura,* 242 F.3d at 959 (holding that Congress derives its ability to apply RFRA to federal prisons from its Article I authority over the federal criminal justice system); *Christians,* 141 F.3d at 861 (upholding application of RFRA to bankruptcy proceedings). As noted by *Christians,* "RFRA is an appropriate means by Congress to modify the United States bankruptcy laws.... [W]e can conceive of no argument to support the contention [ ] that Congress is incapable of amending the legislation that it has passed." 141 F.3d at 861.

Likewise, we do not see how, by enacting RFRA for the federal sphere, Congress violates the separation of powers doctrine. The sweeping language used in *Boerne* derived from the Court's discussion of Congress's exercise of its Fourteenth Amendment enforcement authority, *see Kikumura,* 242 F.3d at 959 (stating that *Boerne's* discussion of separation of powers "must be read in the context of the entire opinion and the question being considered"), but when Congress is acting pursuant to its plenary power, it has the ability, and duty, to legislate according to its own interpretation of the Constitution. *See Boerne,* 521 U.S. at 535, 117 S.Ct. 2157 ("When Congress acts within its sphere of power and responsibilities, it has *not just the right but the duty* to make its own

informed judgment on the meaning and force of the Constitution.") (emphasis added). Indeed, we have previously held that RFRA "does not present itself as an interpretation of the Constitution overruling *Smith;* rather it consists of a command that must be followed as a matter of federal law." *United States v. Bauer,* 84 F.3d 1549, 1558 (9th Cir.1996).

In *Kikumura,* the Tenth Circuit held that RFRA, as applied to the federal government, did not violate the separation of powers doctrine. 242 F.3d at 959–60. So, too, held the Eighth Circuit in *Christians.* 141 F.3d at 860–61. Certainly Congress can provide more individual liberties in the federal realm than the Constitution requires without violating vital separation of powers principles, *see, e.g., Bauer,* 84 F.3d at 1558–59 (listing examples of Congress having provided federal protection broader than that accorded by the Constitution), and we now join our sister circuits in holding RFRA constitutional as applied in the federal realm.

### D

■ Having concluded that RFRA is constitutional as applied in the federal sphere, we must next decide whether it is constitutional as applied to a federal instrumentality such as Guam. In its original form, RFRA expressly applied to Guam. *See* 42 U.S.C. § 2000bb 2(2). Congress's plenary authority over the territories, probably derived from the Territorial Clause, U.S. Const. art. IV, § 3, has long been settled. *See, e.g., First Nat'l Bank v. County of Yankton,* 101 U.S. 129, 133, 25 L.Ed. 1046 (1879) ("[Congress] may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority

---

18. We see no relevant distinction between Congress's ability to legislate in a wholesale manner to protect the exercise of religion, as it did with RFRA, and carving out exemptions on a statute-by-statute basis.

over the people of the Territories and all the departments of the territorial governments."); *see also Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1286 (9th Cir.1985) (stating that Guam is an instrumentality of the federal government over which the federal government exercises plenary control). Congress has plenary authority "in all cases in which it has substantive legislative jurisdiction, so long as the exercise of that authority does not offend some other constitutional restriction." *INS v. Chadha,* 462 U.S. 919, 941, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (citation omitted). As such, we find RFRA constitutional as applied to Guam.[19]

### E

 Having decided that RFRA is constitutional as applied to Guam, finally, we must ask whether Guerrero has established a prima facie claim of a RFRA violation. RFRA provides that "[g]overnment shall not substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb–1(a). To establish a prima facie case, Guerrero must show that the statute at issue works a substantial burden on his

ability to freely practice his religion. *See Kikumura,* 242 F.3d at 960. If the law does create a substantial burden, we may still uphold it if it serves a compelling government interest in the least restrictive manner possible. 42 U.S.C. § 2000bb–1(b).

 A statute burdens the free exercise of religion if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), including when, if enforced, it "results in the choice to the individual of either abandoning his religious principle or facing criminal prosecution." *Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). A substantial burden must be more than an "inconvenience." *Worldwide Church,* 227 F.3d at 1121. Guam argues that while a statute proscribing simple *possession* of marijuana might substantially burden Guerrero's ability to practice Rastafarianism, a statute forbidding *importation* certainly would not.[20]

This court has previously addressed the distinction between possession of a con-

19. That Congress originally defined the term "State" to include Guam, 42 U.S.C. § 2000bb 2(2), does not change our analysis. Congress most likely drafted the provision to ensure that RFRA would cover territories before *Boerne* held RFRA inapplicable to the States. Post-*Boerne,* Congress amended RFRA by substituting the phrase "covered entity" for "State" to clarify its intent that RFRA remain in force as to federal instrumentalities. Religious Land Use and Institutionalized Persons Act of 2000, § 7, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000bb 2(2)). In any case, that Congress chose to call Guam a "State" for purposes of RFRA does not change the fact that Guam is still a territory.

20. Despite Guerrero's assertion to the contrary, we do not believe that Guam waived this argument, nor did Guam concede that a substantial burden existed. The Superior Court of Guam declined to discuss the distinc-

tion between possession and importation, *Guerrero,* No. 0001–91, at 3 n. 1 ("This Court will not involve itself in the mental task of finding it legal for one to possess marijuana, but then be prevented from having any reasonable means to acquire it."), and Guam clearly raised the distinction in its opening brief to the Supreme Court of Guam. Furthermore, even if Guam had made this concession, we are not bound by legal concessions or stipulations made by the parties. *See Avila v. INS,* 731 F.2d 616, 620 (9th Cir.1984) ("A stipulation of law is not binding upon an appellate court.... We are not bound by a party's erroneous view of the law.") (citation and quotation marks omitted). Whether a prosecution for importation of marijuana substantially burdens one's religion is a legal question for courts to decide. *See Bauer,* 84 F.3d at 1559 (holding that prosecution for distribution of marijuana does not burden defendants' religion as a matter of law).

trolled substance and possession with intent to distribute. In *Bauer,* we held that the defendant could use RFRA to defend against his prosecution for simple possession of marijuana, but not against the charges of conspiracy to distribute and possession with intent to distribute. 84 F.3d at 1559. As we said regarding the drug charges beyond the lesser-included offense of simple possession, "[n]othing before us suggests that Rastafarianism would require this conduct. These counts stand." *Id.* Likewise, we are satisfied that Rastafarianism does not require *importation* of a controlled substance, which increases the availability of controlled substances and makes it harder for Guam to control. Therefore, Guam's controlled substance statute does not substantially burden Guerrero's right freely to exercise his religion, and RFRA provides Guerrero no defense to the charge that he unlawfully imported a controlled substance into Guam.

V

The Supreme Court of Guam exceeded its authority by interpreting § 1421b(a) as providing greater religious freedom than that bestowed by the federal Constitution. RFRA, as applied to Guam, is a constitutional exercise of Congress's Article I powers, yet provides no defense to Guerrero, who was prosecuted for importation of marijuana, not simple possession.

**REVERSED.**