Opinion by Judge KOZINSKI; Dissent by Judge N.R. SMITH.
OPINION
KOZINSKI, Circuit Judge:
Pursuant to a law passed by the Guam legislature, eligible “Native Inhabitants of Guam” may register to vote in a plebiscite concerning Guam’s future political relationship with the. United States. Guam will conduct the plebiscite if and when 70 percent of eligible Native Inhabitants register. Plaintiff Arnold Davis is a Guam resident who isn’t eligible to register because he is not a Native Inhabitant. He alleges that Guam’s Native Inhabitant classification, is an unlawful proxy for race. At this stage, we -must determine only whether Davis has standing to challenge the classification and whether his claims are ripe.
I. BACKGROUND
Guam law directs the territory’s Commission on Decolonization to “ascertain the intent of the Native Inhabitants of Guam as to their future political relationship with the United States of America.” 1 Guam Code Ann. § 2105. The same law also provides for a “Political Status Plebiscite.” Id § 2110. The plebiscite would ask eligible Native Inhabitants to choose among three options: (1) “Independence,” (2) “Free Association with the United States of America” or (3) “Statehood.” Id It would be conducted by Guam’s Election Commission on the same day as a general election. Id The Commission on Decolonization would then be required to transmit the plebiscite’s results to the President, Congress and the United Nations as reflecting “the intent of the Native Inhabitants of Guam as to their future political relationship with the United States.” Id § 2105.
Guam will hold the plebiscite if and when 70 percent of all eligible Native Inhabitants [1] register with the Guam Deco- *1314 Ionization Registry. 1 Guam Code Ann. § 2110; 3 Guam Code Ann. §§ 21000, 21003. Native Inhabitants aren’t required to register, although some will be registered automatically unless they submit a written request not to be registered. 3 Guam Code Ann. § 21002.1. Guam reports that the 70 percent threshold isn’t close to being met. Thus, Guam hasn’t set a date for the plebiscite and perhaps never will.
Davis tried to register with the Decolonization Registry, but the application was rejected because Davis isn’t a Native Inhabitant. Davis agrees he’s not a Native Inhabitant but claims that the Native Inhabitant classification violates the Fifth, Fourteenth and Fifteenth Amendments, as well as the Voting Rights Act and the Guam Organic Act[2] because it is a “proxy for race.” Davis seeks a declaration that limiting registration to Native Inhabitants is unlawful, and an injunction against using any registry other than Guam’s general voter registry in determining who’s eligible to register for, and vote in, the plebiscite.
The district court held that Davis lacks standing and his claims are unripe. According to the district court, Davis hasn’t been injured because “there is no discernible future election in sight.” “To suffer a real discernible injury,” the district court held, Guam’s restriction on voter registration to Native Inhabitants “would have to be, by necessity, related to an election that is actually scheduled.” We have jurisdiction pursuant to 28 U.S.C. § 1291 and review de novo. Bova v. City of Medford, 564 F.3d 1093, 1095 (9th Cir.2009).
II. STANDING AND RIPENESS
To “satisfy the standing requirements imposed by the ‘case’ or ‘controversy’ provision of Article III,” Davis must show that he has suffered, or will imminently suffer, a “concrete and particularized” injury to a “judicially cognizable interest.” Bennett v. Spear, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). That injury must be “fairly traceable to the challenged action of the defendants],” and it must appear likely that the injury would be prevented or redressed by a favorable decision. Bennett, 520 U.S. at 167, 117 S.Ct. 1154; see also Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). ’ When determining Article III standing we “accept as true all material allegations of the complaint” and “construe the complaint in favor of the complaining party.” Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir.2011) (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).
Guam law gives some of its voters the right to participate in a registration process that will determine whether a plebiscite will be held. Davis alleges that the law forbids him from participating on the basis of his race. Davis’s allegation— that Guam law provides a benefit to a class of persons that it denies him — is “a type of personal injury [the Supreme Court has] long recognized as judicially cognizable.” Heckler v. Mathews, 465 U.S. 728, 738, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). The plaintiff in Mathews challenged a provision *1315 of the Social Security Act that required certain male workers (but not female workers) to make a showing of dependency as a condition for receiving full spousal benefits. Id. at 731-35, 104 S.Ct. 1387. The statute, however, “prevent[ed] a court from redressing this inequality by increasing the benefits payable to” the male workers. Id. at 739, 104 S.Ct. 1387. Thus, the lawsuit couldn’t have resulted in any tangible benefit to Mathews. The Supreme Court nevertheless held that Mathews had standing to challenge the provision because he sought to vindicate the “right to equal treatment,” which isn’t necessarily “coextensive with any substantive rights to the benefits denied the party discriminated against.” Id.; see also Allen, 468 U.S. at 762, 104 S.Ct. 3315; 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §§ 3531.4 at 215-16, 3531.6 at 454-56 (3d ed.2008). We read Mathews as holding that equal treatment under law is a judicially cognizable interest that satisfies the case or controversy requirement of Article III, even if it brings no tangible benefit to the party asserting it. Guam’s alleged denial of equal treatment to Davis is thus a judicially cognizable injury.
Guam concedes that its law excludes Davis from the registration process because he’s not a Native Inhabitant. It argues, however, that the Native Inhabitant classification can’t injure Davis because the plebiscite is “not self executing and effects no change in political status, right, benefit or privilege for any individual.” But this contradicts Mathews, which held that unequal treatment is an injury even if curing the inequality has no tangible consequences. 465 U.S. at 739, 104 S.Ct. 1387. Moreover, Guam understates the effect of any plebiscite that would be held if the registration threshold were triggered. After the plebiscite, the Commission on Decolonization would be required to transmit the results to the President, Congress and the United Nations, 1 Guam Code Ann. § 2105, thereby taking a public stance in favor of whatever outcome is favored by those voting in the plebiscite.[3] If the plebiscite is held, this would make it more likely that Guam’s relationship to the United States would be altered to conform to that preferred outcome, rather than one of the other options presented in the plebiscite, or remaining á territory. This change will affect Davis, who doubtless has views as to whether a change is appropriate and, if so, what that change should be. Guam law thus does provide a tangible benefit to Native Inhabitants that Davis alleges he is unlawfully denied: the right to help determine whether a plebiscite is held. This is not unlike the right to participate in jury service, which may not be denied on a constitutionally unequal basis. See Batson v. Kentucky, 476 U.S. 79, 87, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (citing Carter v. Jury Comm’n of Greene Cnty., 396 U.S. 320, 329-30, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970)).[4]
*1316 Davis’s challenge to the Native Inhabitant classification is also ripe because he alleges he’s currently being denied equal treatment under Guam law. The registration process is ongoing and Guam must hold the plebiscite if 70 percent of eligible Native Inhabitants register. By being excluded from the registration process, Davis claims he is unlawfully denied a right currently enjoyed by others: to help determine whether a plebiscite will be held. The ripeness question thus “coincides squarely with standing’s injury in fact prong.” Bova, 564 F.3d at 1096 (quoting Thomas v. Anchorage Equal Rights Comm’n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)); see also 13B Federal Practice & Procedure § 3531.12 at 163.
Guam, maintains that its plebiscite law does not, in fact, violate Equal Protection, the Fifteenth Amendment or the Voting Rights Act. But we need not resolve these issues to determine whether Davis’s claims satisfy the case or controversy requirement of Article III. These are merits questions, and standing doesn’t “depend[] on the merits of the plaintiff’s contention that particular conduct is illegal.” Warth, 422 U.S. at 500, 95 S.Ct. 2197.
CONCLUSION
Davis’s challenge to Guam’s registration restriction asserts a judicially cognizable injury that would be prevented or redressed if the district court were to grant his requested relief. Davis therefore has Article III standing to pursue his challenge to Guam’s alleged race-based registration classification. The claim is ripe because Davis alleges he is currently subject to unlawful unequal treatment in the ongoing registration process. Therefore, we need not decide whether any of the other injuries Davis alleges follow from Guam’s Native Inhabitant restriction would be sufficient to confer standing independently. In particular, we express no view as to whether the challenged law resulted in the type of “stigmatizing” harm that we’ve held may be a judicially cognizable injury in the Establishment Clause context. See Catholic League v. City & Cnty. of S.F., 624 F.3d 1043, 1052-53 (9th Cir.2010) (en banc). Nor do we decide whether an alleged violation of the Voting Rights Act is itself a judicially cognizable injury.
In the district court, Davis also sought to enjoin Leonardo Rapadas, the Attorney General of Guam, from enforcing a provision of Guam’s criminal law that makes it a crime for a person who knows he’s not a Native Inhabitant to register for the plebiscite. See 3 Guam Code Ann. § 21009. The district court held that Davis lacked standing to seek this injunction because he had not “shown that he is subject to a genuine threat of imminent prosecution.” While Rapadas is still listed as a nominal defendant on appeal, Davis doesn’t argue that the district court erred in dismissing this claim. Therefore, any claim of error is waived. See Wagner v. Cnty. of Maricopa, 747 F.3d 1048, 1059 (9th Cir.2013).
We decline Davis’s suggestion that we reach the merits of his claims in the event we find his claims to be justiciable. Instead we leave it to the district court to consider the merits of Davis’s non-waived claims in the first instance.
AFFIRMED in part, REVERSED in part, and REMANDED.
Appellees other than Rapadas shall pay costs on appeal. Rapadas shall recover his costs, if any, from Davis.

. Guam law defines "Native Inhabitants” as persons who became U.S. citizens by virtue of the Guam Organic Act of 1950 and their descendants. 1 Guam Code Ann. § 2102. The Organic Act granted citizenship to three classes of persons: (1) Spanish subjects who inhabited Guam on April 11, 1899, when Spain ceded Guam to the United States in the Treaty of Paris (and their children); (2) persons who were born on Guam and resided there on April 11, 1899 (and their children); and (3) persons born on Guam on or after April 11, 1899, when Guam was subject to U,S. jurisdiction. See Organic Act of Guam, Pub.L. No. 630, 64 Stat. 384, 384 (Aug. 1, 1950).

. The Organic Act extends the rights afforded by several constitutional provisions to Guam, including the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment. 48 U.S.C. § 1421b(u); Guam v. Gueirero, 290 F.3d 1210, 1214-15 (9th Cir.2002). The Organic Act also contains its own anti-discrimination provisions. See, e.g.,, 48 U.S.C. § 1421b(n). The Voting Rights Act applies to Guam, a U.S. territory. 52 U.S.C. § 10101(a)(1) (formerly 42 U.S.C. § 1971(a)(1)).

.The U.S. House of Representatives, for one, has indicated that it has open ears. In a 1998 resolution, it acknowledged the Commission on Decolonization and "reaffirm[ed] its commitment to the United States citizens of Guam for increased self-government, consistent with self-determination for the people of Guam.” H.R. Res. 494, 105th Cong., 144 Cong. Rec. 25922, 25922-23 (1998).

.Although Batson involved a criminal defendant's challenge to his conviction, the Court reiterated its holding in Carter that when a state "den[ies] a person participation in jury service on account of his race, the [sjtate unconstitutionally discriminate^] against the excluded juror.” Batson, 476 U.S. at 87, 106 S.Ct. 1712; see also Carter, 396 U.S. at 329, 90 S.Ct. 518 ("People excluded from juries because of their race are as much aggrieved *1316 as those indicted and tried by juries chosen under a system of racial exclusion.”). Whether participation in Guam's registration process is "deemed a right, a privilege, or a duty,” Guam must "hew to federal constitutional criteria” when determining who is eligible to register. Id. at 330, 90 S.Ct. 518.