MAGILL, Circuit Judge.
In our earlier opinion in this matter we reversed the district court and held that under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, bankruptcy debtors’ religious tithes could not be recovered from a church as avoidable transactions in adversary proceedings. See Christians v. Crystal Evangelical Free Church (In re Young), 82 F.3d 1407, 1420 (8th Cir.1996). In City of Boerne v. Flores, _ U.S. _, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court held that RFRA was unconstitutional as applied to state law because Congress had exceeded its enforcement powers under § 5 of the Fourteenth Amendment. The Supreme Court subsequently summarily vacated and remanded our decision in Christians for reconsideration in light of Flores. See Christians v. Crystal Evangelical Free Church, _ U.S. _, _, 117 S.Ct. 2502, 2502, 138 L.Ed.2d 1007 (1997). Upon reconsideration, we conclude that, under the Bankruptcy Clause and the Necessary and Proper Clause of Article I of the Constitution, RFRA is constitutional as applied to federal law. Accordingly, we reinstate our previous decision, and again reverse the district court.
I.
Bruce and Nancy Young are active members of the Crystal Evangelical Free Church *857 (the Church). In accordance with their religious beliefs, the Youngs tithed ten percent of their annual income to the Church. While the Church teaches that its members should contribute to support the Church, it does not require payment for attendance or membership, and would provide all services to the Youngs regardless of the amount of their tithes. Between February 1991 and February 1992, the Youngs tithed $13,450.00 to the Church.
The Youngs filed a joint Chapter 7 bankruptcy petition in February 1992. Because the Youngs had been insolvent during the previous year, bankruptcy trustee Julia Christians (the Trustee) sought to avoid the Youngs’ tithes to the Church as fraudulent transfers under 11 U.S.C. § 548(a)(2)(A). Both the bankruptcy court and the district court held that the tithes to the church were avoidable transactions, and allowed the Trustee to recover the tithes from the Church.
To avoid the Youngs’ tithes under 11 U.S.C. § 548(a)(2)(A), the Trustee had the burden of proving that “(1) there was a transfer of the debtors’ interest in property (2) made on or within a year preceding the filing of the petition (3) while the debtors were insolvent (4) in exchange for which the debtors received less than reasonably equivalent value.” Christians, 82 F.3d at 1410. The parties stipulated that the first three factors were present. See id. We held that the Trustee had also proven the fourth factor, because the Church did not premise any of its services on the Youngs’ tithes and therefore did not provide anything in exchange for the tithes. See id. at 1415. Accordingly, we held that the Youngs’ tithes would ordinarily be avoidable transactions. See id. at 1416.
We also concluded, however, that allowing the Trustee “recovery of the contributions substantially burdens the debtors’ free exercise of their religion and is not in furtherance of a compelling governmental interest and therefore violates the RFRA.” Id. at 1417. Because “RFRA provides a defense against the order of the district court permitting the trustee to avoid the debtors’ contributions to the church,” we held that “[t]he trustee is not entitled to recover $13,450 from the church.” Id. at 1420.
After this Court denied the Trustee’s petition for rehearing en banc, see Christians v. Crystal Evangelical Free Church (In re Young), 89 F.3d 494, 494 (8th Cir.1996), the Supreme Court held that RFRA was unconstitutional as applied to state law. See Flores, _ U.S. at _, 117 S.Ct. at 2172. Subsequently, the Supreme Court granted certiorari in the instant case, vacated our initial opinion, and remanded for reconsideration in light of Flores. See Christians, _ U.S. at _, 117 S.Ct. at 2502. On remand, the Trustee argues that RFRA is unconstitutional as applied to federal law because Congress violated the separation of powers doctrine in enacting the statute and because RFRA violates the Establishment Clause of the First Amendment.
II.
A. RFRA and Flores
RFRA was enacted as a legislative response to the Supreme Court’s decision in Employment Div., Dep’t of Human Resources v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In Smith, the Supreme Court held that the First Amendment “right of free exercise [of religion] does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).” Id. at 879, 110 S.Ct. at 1600 (quotations omitted). In reaching this holding, the Supreme Court effectively overruled precedent that had provided greater protection to individuals whose religious practices were burdened by the operation of neutral laws. See id. at 883-85, 110 S.Ct. at 1602-04 (rejecting rule of Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), that “governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest”).
Congress enacted RFRA to limit the Smith decision’s impact on the practice of religious liberties. Congress found that “laws ‘neutral’ toward religion may burden *858 religious exercise as surely as laws intended to interfere with religious exercise,” and concluded that “governments should not substantially burden religious exercise without compelling justification.” 42 U.S.C. § 2000bb(a)(2) & (3). Congress enacted RFRA “to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened [and] to provide a claim or defense to persons whose religious exercise is substantially burdened by government.” 42 U.S.C. § 2000bb(b)(1) & (2).
RFRA codified the compelling interest test of Sherbert and Yoder, and provided that the government could “substantially burden a person’s exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.” 42 U.S.C. § 2000bb-1(b)(1) & (2). Congress intended RFRA to apply “to all Federal and State law.” 42 U.S.C. § 2000bb-3(a); see also 42 U.S.C. § 2000bb-2(l) (defining “government” to include “a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, a State, or a subdivision of a State”).
Whether Congress has the authority to impose RFRA on state law was soon questioned, see, e.g., Hamilton v. Schriro, 74 F.3d 1545, 1570 (8th Cir.) (McMillian, J., dissenting) (“Because Congress does not have the power under § 5 of the Fourteenth Amendment to enact RFRA, I would hold that the Religious Freedom Restoration Act is unconstitutional”), cert. denied, _ U.S. _, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996), and the Supreme Court ultimately declared that this part of RFRA was beyond Congress’s power to enact. See Flores, _ U.S. at _, 117 S.Ct. at 2172.
As the Flores Court noted, “Congress relied on its Fourteenth Amendment enforce-' ment power in enacting the most far reaching and substantial of RFRA’s provisions, those which impose its requirements on the States.” Id. at _, 117 S.Ct. at 2162. The enforcement power of § 5 of the Fourteenth Amendment is remedial and only allows Congress to preserve rights already protected by the Fourteenth Amendment. See id. at _, 117 S.Ct. at 2164. However, the Fourteenth Amendment, incorporating the Free Exercise Clause of the First Amendment, does not protect individuals practicing their religious beliefs from the operation of neutral law. See Smith, 494 U.S. at 879, 110 S.Ct. at 1600. Because RFRA’s protection went far beyond the protection offered by the Smith Court’s authoritative interpretation of the First Amendment, as incorporated into the Fourteenth Amendment, Congress exceeded the authority provided in § 5 of the Fourteenth Amendment to enforce the Amendment. See Flores, _ U.S. at _, 117 S.Ct. at 2164 (“Legislation which alters the meaning of the Free Exereise Clause cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is.”); id. at _, 117 S.Ct. at 2170 (“RFRA is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior. It appears, instead, to attempt a substantive change in constitutional protections.”).
B. Severability
The Flores Court did not reach any decision as to the constitutionality of RFRA as applied to federal law. By its terms, the Fourteenth Amendment is applicable only to the states, and not to the federal government. See U.S. Const. amend. XIV, § 1. In applying RFRA to the federal government, Congress relied on its enumerated powers in Article I of the Constitution. See H.R.Rep. No. 103-88, at 17 (1993) (“Finally, the Committee believes that Congress has the constitutional authority to enact [RFRA]. Pursuant to Section 5 of the Fourteenth Amendment and the Necessary and Proper Clause embodied in Article I, Section 8 of the Constitution, the legislative branch has been given the authority to provide statutory protection for a constitutional value_”). In conelud- *859 ing that Congress could not rely on § 5 of the Fourteenth Amendment to impose RFRA on state governments, the Flores Court did not address whether Congress could, pursuant to its Article I authority, constitutionally impose RFRA on federal law. Despite this omission, the Trustee in the instant case contends that the Supreme Court’s decision in Flores “means that RFRA is a dead-letter” and that “[t]his Court cannot apply it here.” Appellee’s Br. at 2. We disagree.
Where the Supreme Court strikes down one portion of a statute, we must presume that other portions of the same statute remain in effect “unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.” INS v. Chadha, 462 U.S. 919, 931-32, 103 S.Ct. 2764, 2773-74, 77 L.Ed.2d 317 (1983) (quotations and alteration omitted); see also Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 1479-80, 94 L.Ed.2d 661 (1987) (“Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently.” (emphasis added)). Congress’s goal in enacting RFRA was to protect religious liberties as fully as possible from encroachment by all government actors. RFRA’s protection against federal interference with religious liberties is independent and distinct from its protection against state interference, and there is nothing in RFRA’s text or legislative history to suggest that Congress would have declined to protect religious liberties from federal interference merely because it was unable to protect those liberties from state interference. Assuming that RFRA is constitutional as applied to federal law, we conclude that the portion of RFRA applicable to the federal government is fully severable from the portion applicable to the states. See Alaska Airlines, 480 U.S. at 684, 107 S.Ct. at 1479 (“A court should refrain from invalidating more of the statute than is necessary. Whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.” (quotations and alterations omitted)).
III.
The Trustee argues that RFRA violates the separation of powers doctrine and the Establishment Clause of the First Amendment, and is therefore unconstitutional as applied to federal law. We address these issues in turn.
A. Separation of Powers: The Bankruptcy Clause and the Necessary and Proper Clause
The Trustee apparently suggests that, because Congress disagreed with the Supreme Court’s interpretation of the First Amendment, RFRA necessarily constitutes a violation of the separation of powers doctrine. We disagree.
The framers of the Constitution created co-equal branches of government with distinct responsibilities and authorities. “The essential balance created by this allocation of authority was a simple one. The Legislature would be possessed of power to prescribe the rules by which the duties and rights of every citizen are to be regulated, but the power of the interpretation of the laws would be the proper and peculiar province of the courts.” Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 222, 115 S.Ct. 1447, 1454-55, 131 L.Ed.2d 328 (1995) (quotations and alterations omitted). The judicial authority to “say what the law is” extends to the interpretation of the Constitution itself. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176-77, 2 L.Ed. 60 (1803). While Congress can seek to change the meaning of the Constitution through amendment, see U.S. Const. art. V, it may not do so through the passage of ordinary legislation. See Flores, _ U.S. at _, 117 S.Ct. at 2168 (“If Congress could define its own powers by altering the Fourteenth Amendment’s meaning, no longer would the Constitution be ‘superior paramount law, unchangeable by ordinary means.’ It would be ‘on a level with ordinary legislative acts, and, like other acts, ... alterable when the legislature shall *860 please to alter it.’” (ellipses in original) (quoting Marbury, 5 U.S. (1 Cranch) at 177)).
While Congress cannot, through ordinary legislation, amend the Court’s authoritative interpretation of the Constitution, “congressional disapproval of a Supreme Court decision does not impair the power of Congress to legislate a different result, as long as Congress had that power in the first place.” United States v. Marengo County Comm’n, 731 F.2d 1546, 1562 (11th Cir.1984); see also Flores, _ U.S. at _, 117 S.Ct. at 2171 (“When Congress acts within its sphere of power and responsibilities, it has not just the right but the duty to make its own informed judgment on the meaning and force of the Constitution. This has been clear from the early days of the Republic.”). Congress has often provided statutory protection of individual liberties that exceed the Supreme Court’s interpretation of constitutional protection. See, e.g., Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa to 2000aa-12 (reacting to Zurcher v. Stanford Daily, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), and providing journalists with greater protection against searches and seizures); National Defense Authorization Act for Fiscal Years 1988 and 1989, § 508, 10 U.S.C. § 774 (reacting to Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986), and providing that members of military were entitled to wear religious headgear); cf Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (reacting to Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), and equating employment discrimination based on pregnancy with employment discrimination based on gender). Because Congress need not agree with everything the Supreme Court does in order for its legislation to pass constitutional muster, we conclude that RFRA is not contrary to the Constitution merely because Congress disagreed with the Smith Court’s interpretation of the Free Exercise Clause.
The key to the separation of powers issue in this case is thus not whether Congress disagreed with the Supreme Court’s constitutional analysis, but whether Congress acted beyond the scope of its constitutional authority in applying RFRA to federal law. Because the “principle of the law of federal courts [is] that constitutional issues affecting legislation will not be determined in broader terms than are required by the precise facts to which the ruling is to be applied,” EEOC v. Catholic Univ. of Am., 83 F.3d 455, 469 (D.C.Cir.1996) (quotations and alteration omitted), we examine whether Congress had the constitutional authority to apply RFRA to the Bankruptcy Code.
Article I of the Constitution gives Congress the power to establish “uniform Laws on the subject of Bankruptcies throughout the United States.” U.S. Const. art. I, § 8, cl. 4. Unlike the limited scope of authority granted to Congress by § 5 of the Fourteenth Amendment to enforce that Amendment, “Congress has plenary authority in all cases in which it has substantive legislative jurisdiction, so long as the exercise of that authority does not offend some other constitutional restriction.” Chadha, 462 U.S. at 941, 103 S.Ct. at 2778 (quotations and citation omitted). The Supreme Court has explained that Congress’s authority under the Bankruptcy Clause
extends to all cases where the law causes to be distributed, the property of the debt- or among his creditors; this is its least limit. Its greatest, is the discharge of a debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject — distribution and discharge — are in the competency and discretion of Congress. With the policy of a law, letting in all classes, — others as well as traders; and permitting the bankrupt to come in voluntarily, and be discharged without the consent of his creditors, the courts' have no concern; it belongs to the lawmakers.
Hanover Nat’l Bank v. Moyses, 186 U.S. 181, 186, 22 S.Ct. 857, 859-60, 46 L.Ed. 1113 (1902) (quotations omitted).
The Constitution also gives Congress the power “[t]o make all Laws which shall be necessary and proper for carrying into Execution” its bankruptcy power. U.S. Const. art. I, § 8, cl. 18. In considering the authority granted by the Necessary and Proper *861 Clause to Congress to execute the powers enumerated in Article I, the Supreme Court has explained that:
[W]e think the sound construction of the . constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers áre to be carried into execution, which will enable that body to perform the high duties assigned to it, in -the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.
M’Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819).
We conclude that RFRA is an appropriate means by Congress to modify the United States bankruptcy laws. In attempt ing to avoid the .Youngs’ tithes to the church, the Trustee relied on an affirmative act of Congress defining which transactions of debtors in bankruptcy may be avoided. See 11 U.S.C. § 548(a)(2)(A). RFRA, however, has effectively amended the Bankruptcy Code, and has engrafted the additional clause ' to § 548(a)(2)(A) that a recovery that places a substantial burden on a debtor’s exercise of religion will not be allowed unless it is the least restrictive means to satisfy a compelling governmental interest. See 42 U.S.C. § 2000bb-1(a) & (b). The Trustee has not contended, and we can conceive of no argument to support the contention, that Congress is incapable of amending the legislation that it has passed. See Catholic Univ. of Am., 83 F.3d at 470 (‘We doubt that [a Title VII plaintiff challenging the constitutionality of RFRA as applied to federal law] would argue that Congress lacks at least the facial authority to determine against whom, and under what circumstances, Title VII and other federal laws will be enforced.”). Neither can we accept any argument that allowing the discharge of a debt in bankruptcy and preventing the recovery of a transfer made by insolvent debtors is beyond the authority of Congress. See Hanover Nat’l Bank, 186 U.S. at 186, 22 S.Ct. at 859-60. We therefore conclude that Congress had the authority to enact RFRA and make it applicable to the law of bankruptcy.
B. Establishment Clause
In enacting RFRA, Congress sought to preserve First Amendment values by protecting the exercise of religious beliefs from substantial burdens imposed by the operation of otherwise neutral laws. See S.Rep. No. 103-111, at 14 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1903. Although the Supreme Court has repeatedly held that excepting religious organizations from the sweep of neutral laws does not violate the Constitution, see, e.g., Corporation of the Presiding Bishop v. Amos, 483 U.S. 327, 338-40, 107 S.Ct. 2862, 2869-70, 97 L.Ed.2d 273 (1987) (exemption from federal antidiseriminátion laws for religious organizations does not violate Establishment Clause); Gillette v. United States, 401 U.S. 437, 460, 91 S.Ct. 828, 841, 28 L.Ed.2d 168 (1971) (exemption from military draft for religious conscientious objectors does not violate Establishment Clause); Walz v. Tax Comm’n, 397 U.S. 664, 680, 90 S.Ct. 1409, 1417, 25 L.Ed.2d 697 (1970) (state property tax exemption for religious organizations does not violate Establishment Clause), the Trustee nevertheless contends that Congress violated the Establishment Clause of the First Amendment. We disagree.
The Establishment Clause provides that “Congress shall make ho law respecting an establishment of religion.” U.S. Const, amend. I. The Supreme Court has explained that “[t]he language of the Religion Clauses of the First Amendment is at best opaque,” Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 2110, 29 L.Ed.2d 745 (1971), and that a “law ‘respecting’ the proscribed result, that is, the establishment of religion, is not always easily identifiable as one violative of the Clause.” Id. The Court has, however, identified “three main evils against which the Establishment Clause was intended to afford protection: sponsorship, financial support, and active involvement of the, sovereign in religious activity.” Id. (quotations omitted); see also Gillette, 401 U.S. at 449, 91 S.Ct. at 836 (noting that “the central purpose of the *862 Establishment Clause” is “ensuring governmental neutrality in matters of religion”).
The Supreme Court’s interpretation of the Establishment Clause does “not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable.” Lemon, 403 U.S. at 614, 91 S.Ct. at 2112. Indeed, the “Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause,” Hobbie v. Unemployment Appeals Comm’n, 480 U.S. 136, 144-45, 107 S.Ct. 1046, 1050-51, 94 L.Ed.2d 190 (1987) (quotations omitted), and that “[t]he limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by the Free Exercise Clause.” Walz, 397 U.S. at 673, 90 S.Ct. at 1413-14.
The Lemon Court warned that, in determining whether the Establishment Clause has been violated, courts are not “to engage in a legalistic minuet in which precise rules and forms must govern. A true minuet is a matter of pure form and style, the observance of which is itself the substantive end. Here we examine the form of the relationship for the light that it casts on the substance.” Lemon, 403 U.S. at 614, 91 S.Ct. at 2112. In examining this substance, the Supreme Court crafted a three-part test to determine if a statute avoids a violation of the Establishment Clause:
First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion.
Id. at 612-13, 91 S.Ct. at 2111-12 (quotations and citations omitted). We believe that RFRA has met each of these three elements.
We conclude that RFRA, although designed to protect religious rights, has a secular purpose. That a law must have a secular purpose “does not mean that the law’s purpose must be unrelated to religion— that would amount to a requirement that the government show a callous indifference to religious groups, and the Establishment Clause has never been so interpreted.” Corporation of the Presiding Bishop, 483 U.S. at 335, 107 S.Ct. at 2868 (quotations and citations omitted). Rather, the Supreme Court has explained that “Lemon’s ‘purpose’ requirement aims at preventing the relevant governmental decisionmaker — in this case, Congress — from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters.” Id.
Congress’s purpose in enacting RFRA was not to benefit a particular religious sect, but rather to protect one of “the most treasured birthrights of every American” — the “right to observe one’s faith, free from Government interference.” S.Rep. No. 103-111, at 4, reprinted in 1993 U.S.C.C.A.N. at 1893-94. This effort to protect First Amendment values is “neutral in the sense of the Establishment Clause.” Gillette, 401 U.S. at 453, 91 S.Ct. at 838. The Supreme Court has explained that “it is hardly impermissible for Congress to attempt to accommodate free exercise values, in line with our happy tradition of avoiding unnecessary clashes with the dictates of conscience.” Id. (quotations omitted); see also Corporation of the Presiding Bishop, 483 U.S. at 335, 107 S.Ct. at 2868 (“[I]t is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions.”).
Nor do we believe that RFRA improperly advances or inhibits religion under the second prong of the Lemon test. Rather than providing an affirmative benefit to religion, RFRA only protects individuals from laws which “substantially burden a person’s exercise of religion.” 42 U.S.C. § 2000bb-l(a). As the Supreme Court has noted, “[a] law is not unconstitutional simply because it allows churches to advance religion, which is their very purpose. For a law to have forbidden ‘effects’ under Lemon, it must be fair to say that the government itself has advanced religion through its own activities and influence.” Corporation of the Presiding Bishop, 483 U.S. at 337, 107 S.Ct. at 2869 (emphasis in original).
*863 It is trae, of course, that RFRA treats religion differently than irreligión. In a brief, separate concurrence to the opinion in Flores, Justice Stevens stated his belief that RFRA “is a ‘law respecting an establishment of religion’ that violates the First Amendment to the Constitution” because “governmental preference for religion, as opposed to irreligión, is forbidden by the First Amendment.” Flores, _ U.S. at _, 117 S.Ct. at 2172 (Stevens, J., concurring). This viewpoint is in direct contradiction to the declaration of a majority of the Supreme Court in Corporation of the Presiding Bishop, where the Court explained that it
has never indicated that statutes that give special consideration to religious groups are per se invalid. That would ran contrary to the teaching of our cases that there is ample room for accommodation of religion under the Establishment Clause. Where, as here, government acts with the proper purpose of lifting a regulation that burdens the exercise of religion, we see no reason to require that the exemption come packaged with benefits to secular entities.
483 U.S. at 338, 107 S.Ct. at 2869 (citation omitted); see also Gillette, 401 U.S. at 454, 91 S.Ct. at 838 (“‘Neutrality’ in matters of religion is not inconsistent with ‘benevolence’ by way of exemptions from onerous duties, so long as an exemption is tailored broadly enough that it reflects valid secular purposes.” (citation omitted)).
Finally, it does not appear to us that RFRA “foster[s] an excessive government entanglement with religion.” Lemon, 403 U.S. at 613, 91 S.Ct. at 2111 (quotations omitted). Indeed, RFRA was designed to prevent such an entanglement by limiting the impact' that neutral laws have on religion. See Corporation of the Presiding Bishop, 483 U.S. at 339, 107 S.Ct. at 2870 (“It cannot be seriously contended that [the statute] imper-missibly entangles church and state; the statute effectuates a more complete separation of the two and avoids the kind of intrusive inquiry into religious belief that the District Court engaged in in this case. The statute easily passes muster under the third part of the Lemon test.”).
RFRA fulfills each of the elements presented in the Lemon test, and we conclude that Congress did not violate the Establishment Clause in enacting RFRA. Because the portion of. RFRA applicable to federal law violates neither the separation of powers doctrine nor the Establishment Clause, we conclude that RFRA is constitutional. Accordingly, we reinstate our earlier decision in this matter, and again reverse the district court.