Judge SOTOMAYOR dissents in a separate opinion.
WINTER, Circuit Judge.
John Paul Hankins appeals from the dismissal by Judge Hurley of his age discrimination action. Hankins was a clergy member ordained by appellee New York Annual Conference of the United Methodist Church (“NYAC”). He was forced into retirement when he attained the age of 70. Appellee Ernest S. Lyght is the Bishop of the NYAC and has the power to appoint clergy to NYAC churches.
Hankins claims that the NYAC’s mandatory retirement policy violates the Age Discrimination in Employment Act of 1967 (“ADEA”), 29 U.S.C. § 621 et seq. We hold that the Religious Freedom Restoration Act of 1993 (“RFRA”), 42 U.S.C. § 2000bb et seq.,.is constitutional as applied to federal law; it therefore amended the ADEA and governs the merits of the principal issue raised by the parties. We vacate the dismissal of Hankins’ complaint and remand for a determination of whether application of the ADEA to Hankins’ relationship with the NYAC and Lyght violates the RFRA.
BACKGROUND
We assume the existence of the facts as alleged in the complaint. Hankins was ordained by the NYAC and served as a clergy member from 1962 to July 1, 2003. He turned 70 on November 5, 2002, and was forced into retirement on July 1, 2003, as prescribed by paragraph 356 of the Methodist Book of Discipline.
According to a statement by the Methodist Church’s Council of Bishops, the Book of Discipline is neither “sacrosanct” nor “infallible, but ... is the most current statement of how United Methodists agree to live together” as “an inclusive society without regard to ethnic origin, economic condition, gender, age, or the disabilities of its constituents.” The complaint alleges that the Book of Discipline contains “subject matters that are sectarian and ecclesiastical in nature[,] being related to the nature of the Deity and the Trinity, the scriptures, the tenets of the United Methodist Church, the theological grounding of biblical faith, the teachings of John Wesley and/or other religious principles or values (... ‘religious considerations’),” as well as “subject matters that are secular, temporal and/or civil in nature[,] not being determined, controlled or influenced by any religious considerations.” The complaint further claims that paragraph 356, under which Hankins was mandatorily retired, “is a secular, temporal, and/or civil subject matter, not being determined, controlled *100 or influenced by any religious considerations.”
Bishop Lyght told Hankins and other members of the Church that he had the authority to reappoint Hankins as pastor, despite the fact that Hankins is over 70 years old. However, Bishop Lyght also stated that it is his “personal policy (as distinguished from the policy set forth in the Book of Discipline) never to reappoint members of the clergy who have attained age seventy to the church out of which they were retired.”
Appellant brought an age discrimination charge to the Equal Employment Opportunity Commission (“EEOC”) on March 19, 2003. The EEOC issued a Notice of Right to Sue on April 11, 2003. Appellant also filed a Verified Complaint with the New York Division of Human Rights on June 11, 2003; that Complaint was dismissed for administrative convenience on July 1, 2003. Appellant filed the instant suit on July 3, 2003.
Appellant’s complaint claimed that the mandatory retirement policy violated the ADEA, the New York Human Rights Law, and the NYAC’s covenant with him (Counts I, II, and IV); and that Bishop Lyght’s personal policy against reappointing retired clergy violated the ADEA and Human Rights Law (Count III).[1]
Appellees moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted, under Rules 12(b)(1) and (6) respectively. The district court, ruling orally, declined to decide the 12(b)(1) motion, which was apparently based on deficiencies in the EEOC’s review of appellant’s charge. Instead, the court granted the 12(b)(6) motion based on a “ministerial exception” to the ADEA — a rule adopted by several circuits that civil rights laws cannot govern church employment relationships with ministers without violating the free exercise clause because they substantially burden religious freedom. See, e.g., McClure v. Salvation Army, 460 F.2d 553, 560 (5th Cir.1972) (applying Title VII to church-minister relationship “would result in an encroachment by the State into an area of religious freedom into which it is forbidden to enter” by the Free Exercise Clause). The court dismissed the complaint under Rule 12(b)(6).
DISCUSSION
Appellant argues that the ministerial exception should not insulate a church’s nonreligious regulations that discriminate against ministers on the basis of age. Ap-pellees assert that this action is barred by EEOC errors. Alternatively, they continue to rely upon “the ministerial exception,” the Free Exercise clause, and the Establishment Clause, claiming that applying the ADEA to the church-minister relationship would substantially burden religion. In that regard, appellees note that “for this very reason” Congress passed the RFRA. We address the alleged EEOC errors before turning to the main issue: whether the RFRA amended the ADEA.
a) Completion of Administrative Proceedings
Appellees argue that the district court lacked jurisdiction because the EEOC issued appellant’s Notice of Right to Sue fewer than sixty days after his charge was filed.[2] We disagree.
*101 Appellant satisfied all statutory requirements for bringing this private action under the ADEA. He filed an age discrimination charge with the EEOC on March 19, 2003; the EEOC issued a Notice of Right to Sue on April 11, 2003. Under 29 U.S.C. § 626(d) and (e), appellant had to file the instant suit more than sixty days after filing his EEOC complaint and within ninety days of his receipt of the EEOC Notice. Hankins complied with both requirements by filing suit on July 3, 2003— more than 60 days after March 19, and 83 days after April 11. Furthermore, contrary to appellees’ arguments, the instant suit was not barred by appellant’s June 11, 2003 filing of a Complaint with the New York Division of Human Rights because the Division dismissed the complaint on July 1, 2003, before appellant filed this suit. See 29 U.S.C. § 633(b) (ADEA prohibits bringing suit before 60 days after commencement of state proceedings, “unless such proceedings have been earlier terminated”).
Appellees rely for their jurisdictional contention on two Title YII cases: Martini v. Fed. Nat’l Mortgage Ass’n, 178 F.3d 1336 (D.C.Cir.1999), and Rodriguez v. Connection Tech. Inc., 65 F.Supp.2d 107 (E.D.N.Y.1999). These cases inferred from the language of 42 U.S.C. § 2000e-5(f)(1)[3] that the EEOC lacks authority to issue right-to-sue notices based on Title VII claims before 180 days after a charge is filed. E.g., Martini, 178 F.3d at 1347 (“[T]he EEOC’s power to authorize private suits within 180 days undermines its express statutory duty to investigate every charge filed, as well as Congress’s unambiguous policy of encouraging informal resolution of charges up to the 180th day.”). We have not decided whether the regulation allowing early issuance of right-to-sue notices, 29 C.F.R. § 1601.28(a)(2), is a permissible construction of Section 2000e-5. We express no opinion on the issue here, although we note that two circuits and several district courts within this circuit have disagreed with Martini and Rodriguez. Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1061-63 (11th Cir.1994) (early issuance of right-to-sue letter by EEOC does not bar a Title VII suit); Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251, 1257 (9th Cir.1980) (same); Commodari v. Long Island Univ., 89 F.Supp.2d 353, 381— 83 (E.D.N.Y.2000) (same); Palumbo v. Lufthansa German Airlines, 1999 U.S. Dist. LEXIS 11412, No. 98 Civ. 5005, 1999 WL 540446, at *2 (S.D.N.Y. July 26, 1999) (same); Figueira v. Black Entm’t Television, Inc., 944 F.Supp. 299, 303-08 (S.D.N.Y.1996) (same).
The key fact in the present matter is that the language of 29 U.S.C. § 626, which authorizes suits under the ADEA, differs significantly from that of Section 2000e-5(f)(l). Section 626 provides that “[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC].” Id. § 626(d). Appellant complied with this *102 provision by waiting sixty days after filing his EEOC charge before bringing the instant suit. The fact that the EEOC terminated its proceedings prior to the expiration of sixty days was irrelevant to the district court’s authority to entertain the case. This is especially so because Section 626, unlike Section 2000e-5, explicitly contemplates early termination of EEOC investigations. Id. § 626(e) (“If a charge filed with the [EEOC] under this chapter is dismissed or the proceedings of the [EEOC] are otherwise terminated by the [EEOC], the [EEOC] shall notify the person aggrieved.”). This suit was therefore properly before the district court.
b) The Religious Freedom Restoration Act
In our view, the dispositive issue in this matter concerns the application of the RFRA. The statute’s substantive provisions state:
(a) In general. Government shall not substantially burden a person’s exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
(b) Exception. Government may substantially burden a person’s exercise of religion only if it demonstrates that application of the burden to the person—
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
42 U.S.C. § 2000bb-l.
The test set out in Subsection (b)(1) and (2) “applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993.” Id. § 2000bb-3(a). The RFRA’s remedial provision states that “[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.” Id. § 2000bb-l(c). “[G]overnment” is in turn defined to include any “branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States.” Id. § 2000bb-2(l).
The present action is a suit against a church and an official of that church. The suit claims that the defendants violated a federal statute, the ADEA, and seeks judicial remedies; appellees claim that application of the statute would substantially burden the exercise of their religion. If the RFRA’s test for evaluating burdens on religious activity- — Subsections (b)(1) and (2) — is not met, appellees can arguably assert a violation of the RFRA as a complete defense.
The district court dismissed the case based on a “ministerial exception” that some courts had read into various anti-discrimination laws- — -an unresolved issue in this circuit— including the ADEA. Whatever the merits of that exception as statutory interpretation or policy, it has no basis in statutory text, whereas the RFRA, if applicable, is explicit legislation that could not be more on point. Given the absence of other relevant statutory language, the RFRA must be deemed the full expression of Congress’s intent with regard to the religion-related issues before us and displace earlier judge-made doctrines that might have been used to ameliorate the ADEA’s impact on religious organizations and activities. City of Milwaukee v. Illinois, 451 U.S. 304, 314, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (“Federal common law is a necessary expedient, and when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by fed *103 eral courts disappears.”) (internal quotation marks and citations omitted).
There is little caselaw addressing the issue whether the RFRA applies to an action by a private party seeking relief under a federal statute against another private party who claims that the federal statute substantially burdens his or her exercise of religion.[4] The RFRA’s language surely seems broad enough to encompass such a case. The statutory language states that it “applies to all federal law, and the implementation of that law,” 42 U.S.C. § 2000bb-3(a), and that a defendant arguing that such a law substantially burdens the exercise of religion “may assert [a violation of the RFRA] as a ... defense in a judicial proceeding.” Id. § 2000bb-l(c). This language easily covers the present action. The only conceivably narrowing language is the phrase immediately following: “and obtain appropriate relief against a government.” Id. However, this language would seem most reasonably read as broadening, rather than narrowing, the rights of a party asserting the RFRA. The narrowing interpretation — permitting the assertion of the RFRA as a defense only when relief is also sought against a governmental party — involves a convoluted drawing of a hardly inevitable negative implication. If such a limitation was intended, Congress chose a most awkward way of inserting it. The legislative history is neither directly helpful nor harmful to that view.
We need not, however, decide whether the RFRA applies to a federal law enforceable only in private actions between private parties. The ADEA is enforceable by the EEOC as well as private plaintiffs, and the substance of the ADEA’s prohibitions cannot change depending on whether it is enforced by the EEOC or an aggrieved private party. See United States v. Brown, 79 F.3d 1550, 1559 n. 16 (11th Cir.1996) (“The meaning of the statutory words ‘scheme to defraud’ does not change depending on whether the case is Civil RICO or criminal.”). An action brought by an agency such as the EEOC is clearly one in which the RFRA may be asserted as a defense, and no policy of either the RFRA or the ADEA should tempt a court to render a different decision on the merits in a case such as the present one. Indeed, *104 appellant argues that the RFRA is inapplicable only because it is unconstitutional.
1. Waiver
First, however, we must address whether appellees have waived or forfeited reliance upon the RFRA. In their original brief, as noted, appellees argued that the ADEA was an unlawful burden on their religious activities and that Congress has enacted the RFRA, a statute that applied to all federal laws, “for this very reason.” Appellant’s Brief at 28. Believing that this reference to a seemingly dispositive but otherwise unmentioned statute needed some elaboration and unconvinced that appellant’s claim that the Supreme Court had held the RFRA unconstitutional in all circumstances was correct, we asked for further briefing.
Somewhat to our surprise, appellees’ post-argument letter-brief states that, although all pertinent portions of the RFRA are constitutional, the statute is inapplicable because “the case at bar is a matter relating to a private employment situation and does not involve actions by the government.” Nevertheless, appellees continue to rely upon the “ministerial exception” and the Free Exercise and Establishment Clauses.
In our view, as discussed above, the RFRA’s provisions are directly on point, and allow parties who, like appellees, claim that a federal statute, like the ADEA, substantially burdens the exercise of their religion to assert the RFRA as a defense to any action asserting a claim based on the ADEA. The issue then is whether their post-argument letter-brief constitutes a waiver or forfeiture of that defense.
A party may certainly waive or forfeit a RFRA defense by failing to argue that a law or action substantially burdens the party’s religion. For example, in United States v. Amer, appellant had forfeited the defense that his child kidnaping conviction violated the RFRA, because “[a]t no point during the pretrial, trial, or sentencing proceedings did [appellant] argue that his act of removing and retaining the children was religiously mandated or inspired.” 110 F.3d 873, 879 & n. 1 (2d Cir.1997). Where a party fails to assert a substantial burden on religious exercise before a district court, therefore, the party may not raise that issue — an inherently fact-based one — for the first time on appeal.
However, appellees argued in the district court and here — and continue to argue — that application of the ADEA to the relationship between their church and appellant substantially burdens their religion. They continue to assert the “ministerial exception,” which in their view tracks the Free Exercise clause of the Constitution and the Establishment Clause as well. Appellees’ Brief at 4-15; see Elvig v. Calvin Presbyterian Church, 397 F.3d 790, 790 (9th Cir.2005) (“[T]he ‘ministerial exception’ to Title VII is carved out from the statute based on the commands of the Free Exercise and Establishment Clauses of the First Amendment.”). In substance, therefore, they ask us to apply the RFRA, but not to mention it.
Appellees’ position that the RFRA does not apply to suits between private parties is not determinative of our analysis, given that they have vigorously pursued and preserved the substance of the issue. We are required to interpret federal statutes as they are written — in this case the ADEA as amended by the RFRA — and we are not bound by parties’ stipulations of law. Becker v. Poling Transp. Corp., 356 F.3d 381, 390 (2d Cir.2004); see also Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (“When an issue or *105 claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.”)- We are not in the business of deciding cases according to hypothetical legal schemes, particularly when the hypothetical scheme posed by a party tracks the actual law in all but name.
2. Constitutionality
In addressing the constitutional issues raised by appellant with regard to the RFRA, we first describe the statutory background.
The RFRA was passed in response to Employment Div. v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The Supreme Court held there that “the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).” Id. at 879, 110 S.Ct. 1595 (internal quotation marks and citation omitted). Smith limited the applicability of the “compelling state interest” test the Court had previously applied to neutral laws before allowing them to place a substantial burden on religious practice. Id. at 883-84, 110 S.Ct. 1595 (limiting test to mean that “where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of ‘religious hardship’ without compelling reason”).[5]
Congress enacted the RFRA pursuant to two sources of authority, Section 5 of the Fourteenth Amendment and the Necessary and Proper Clause of the Constitution. See H.R.Rep. No. 103-88, at 17 (1993) (“Finally, the Committee believes that Congress has the constitutional authority to enact [the RFRA]. Pursuant to Section 5 of the Fourteenth Amendment and the Necessary and Proper Clause of the Constitution, the legislative branch has been given the authority to provide statutory protection for a constitutional value .... ”). The Supreme Court held that the RFRA could not be enacted under Section 5 of the Fourteenth Amendment, which empowers Congress to enforce the Amendment’s other provisions against the states. City of Boerne v. Flores, 521 U.S. 507, 519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (“Congress does not enforce a constitutional right by changing what that right is.”). The RFRA is therefore unconstitutional as applied to state law.
However, the RFRA applies by its terms not only to the states but also to “all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993.” 42 U.S.C. § 2000bb-3(a); see also id. § 2000bb-2(l) (“ ‘[Government’ includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States.”). Boeme could not have addressed whether the RFRA was validly enacted under the Necessary and Proper Clause because the only issue before the Court was the denial of a building permit to a church by local zoning authorities. 521 U.S. at 512, 117 S.Ct. 2157. Since Boeme, “[ejvery appellate court that *106 has squarely addressed the question has held that the RFRA governs the activities of federal officers and agencies.” O’Bryan v. Bureau of Prisons, 349 F.3d 399, 401 (7th Cir.2003); Guam v. Guerrero, 290 F.3d 1210, 1221 (9th Cir.2002); Henderson v. Kennedy, 265 F.3d 1072, 1073 (D.C.Cir.2001); Kikumura v. Hurley, 242 F.3d 950, 960 (10th Cir.2001); Christians v. Crystal Evangelical Free Church (In re Young), 141 F.3d 854, 856 (8th Cir.1998); see also Madison v. Riter, 355 F.3d 310, 315 (4th Cir.2003).
We join the other circuits in holding that the RFRA is constitutional as applied to federal law under the Necessary and Proper Clause of the Constitution. As presented in this case, the issue is simply whether Congress had the authority to amend the ADEA to include the RFRA standard. See In re Young, 141 F.3d at 861 (the RFRA “has effectively amended the Bankruptcy Code, and has engrafted the additional clause to § 548(a)(2)(A) that a recovery that places a substantial burden on a debtor’s exercise of religion will not be allowed unless it is the least restrictive means to satisfy a compelling governmental interest.”).
Congress enacted the ADEA pursuant to its Commerce Clause powers under Article I. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 78, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (“the ADEA constitutes a valid exercise of Congress’ power ‘[t]o regulate Commerce ... among the several States’ ”) (citing EEOC v. Wyoming, 460 U.S. 226, 243, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983)) (alterations in original); McGinty v. New York, 251 F.3d 84, 91 (2d Cir.2001); see U.S. Const., Art. I, § 8, cl. 3 (“The Congress shall have power ... [t]o regulate commerce with foreign Nations, and among the several States, and with the Indian Tribes.”). Furthermore, the Necessary and Proper Clause authorizes Congress “[t]o make all Laws which shall be necessary and Proper for carrying into Execution” its Article I powers, including its Commerce Clause powers. U.S. Const, art. I, § 8, cl. 18. The Clause allows all legitimate legislation “plainly adapted” to a constitutional end. M’Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819) (“Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.”). Finally, the “plainly adapted” standard requires only “that the effectuating legislation bear a rational relationship to a permissible constitutional end.” United States v. Wang Kun Lue, 134 F.3d 79, 84 (2d Cir.1998).
It is obvious to us that because Congress had the power to enact the ADEA, it also had the power to amend that statute by passing the RFRA. The RFRA was authorized by the Necessary and Proper Clause because its purpose — to protect First Amendment rights as interpreted by the Congress, see S.Rep. No. 103-111, at 14 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1903 — was permissible. “When Congress acts withirUits sphere of power and responsibilities, it has not just the right but the duty to make its own informed judgment on the meaning and force of the Constitution.” Boerne, 521 U.S. at 535, 117 S.Ct. 2157.
The RFRA was also proper as applied to the ADEA in particular because, as noted, Congress had authority to enact that statute under the Commerce Clause. See INS v. Chadha, 462 U.S. 919, 941, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (“ ‘Congress has plenary authority in all cases in which it has substantive legislative jurisdiction, so long as the exercise of that *107 authority does not offend some other constitutional restriction.’ ”) (quoting Buckley v. Valeo, 424 U.S. 1, 132, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)) (internal citation omitted); Guerrero, 290 F.3d at 1220 (“Congress derives its ability to protect the free exercise of religion from its plenary authority found in Article I of the Constitution; it can carve out a religious exemption from otherwise neutral, generally applicable laws based on its power to enact the underlying statute in the first place.”); In re Young, 141 F.3d at 861 (“[W]e can conceive of no argument to support the contention[ ] that Congress is incapable of amending the legislation that it has passed.”).[6]
In his post-argument letter-brief, appellant argues that application of the RFRA to federal law violates separation of powers principles and the Establishment Clause of the Constitution.[7] We address these issues in turn.
Appellant’s separation of powers challenge is that because the RFRA mandates evaluation of laws and actions that burden religion by a standard different from that prescribed by the Supreme Court, it is a Congressional usurpation of judicial power. However, we agree with the Eighth Circuit that “[t]he key to the separation of powers issue in this case is ... not whether Congress disagreed with the Supreme Court’s constitutional analysis, but whether Congress acted beyond the scope of its constitutional authority in applying RFRA to federal law.” In re Young, 141 F.3d at 860; United States v. Marengo County Comm’n, 731 F.2d 1546, 1562 (11th Cir.1984) (“[C]ongressional disapproval of a Supreme Court decision does not impair the power of Congress to legislate a different result, as long as Congress had that power in the first place.”). Indeed, “Congress has often provided statutory protection of individual liberties that exceed the Supreme Court’s interpretation of constitutional protection.” In re Young, 141 F.3d at 860 (collecting examples); Guerrero, 290 F.3d at 1221 (“Certainly Congress can provide more individual liberties in the federal realm than the Constitution requires without violating vital separation of powers principles.”). That the RFRA provides more protection from federal actors and statutes than may be required by the First Amendment hardly undermines separation of powers principles.
With respect to appellant’s Establishment Clause argument, the Clause provides that “Congress shall make no law respecting an establishment of religion.” U.S. Const, amend. I. The Supreme *108 Court has established a three-prong test to determine whether a statute violates the Clause.
First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion.
Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (quotations and citations omitted). Applying this test, the Court has held that exempting religious organizations from compliance with neutral laws does not violate the Constitution. E.g., Corp. of the Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 338-40, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (exemption from federal antidis-crimination laws for religious organizations does not violate Establishment Clause); see also Gillette v. United States, 401 U.S. 437, 460, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (exemption from military draft for religious conscientious objectors does not violate Establishment Clause); Walz v. Tax Comm’n, 397 U.S. 664, 680, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (state property tax exemption for religious organizations does not violate Establishment Clause).
Given these holdings, appellant faces an unwinnable battle in claiming that the RFRA — a limited exemption for religious organizations from compliance with neutral laws — violates the Establishment Clause. The RFRA had a secular legislative purpose within the meaning of Lemon — namely, to protect individual First Amendment rights as interpreted by the Congress. As noted, this purpose was not only permissible but was also required by Congress’s duty to interpret the Constitution. Boerne, 521 U.S. at 535, 117 S.Ct. 2157. A “secular legislative purpose” need not be “unrelated to religion”; rather, Lemon’s first prong aims to prevent Congress “from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters.” Amos, 483 U.S. at 335, 107 S.Ct. 2862; Gillette, 401 U.S. at 454, 91 S.Ct. 828 (“ ‘Neutrality’ in matters of religion is not inconsistent with ‘benevolence’ by way of exemptions from onerous duties, so long as an exemption is tailored broadly enough that it reflects valid secular purposes.”) (citation omitted). The RFRA reflected no purpose to promote a particular religious point of view.
The RFRA also satisfies the other two prongs of the Lemon test. Its principal effect neither advances nor inhibits religion within the meaning of Lemon. “For a law to have forbidden ‘effects’ under Lemon, it must be fair to say that the government itself has advanced religion through its own activities and influence,” rather than simply by granting an exemption to religious organizations. Amos, 483 U.S. at 337-38, 107 S.Ct. 2862 (“Where ... government acts with the proper purpose of lifting a regulation that burdens the exercise of religion, we see no reason to require that the exemption come packaged with benefits to secular entities.”). Although the RFRA certainly provides some benefit to religious organizations, “a law is not unconstitutional simply because it allows churches to advance religion, which is their very purpose.” Id. at 337, 107 S.Ct. 2862. Finally, there is no question that the RFRA decreases rather than fosters government entanglement with religion, as required by the third prong of Lemon. Amos, 483 U.S. at 339, 107 S.Ct. 2862 (An exemption “effectuates a more complete separation of [church and state] and avoids ... intrusive inquiry into religious belief.”).
*109 We note in general that the Supreme Court approved of and invited legislative enactments of religious exceptions to neutral laws in Smith itself. 494 U.S. at 890, 110 S.Ct. 1595. The court pointed to state exceptions to drug laws for sacramental peyote use and noted with approval that “a society that believes in the negative protection accorded to religious belief can be expected to be solicitous of that value in its legislation as well.” Id. (“[T]o say that a nondiscriminatory religious-practice exemption is permitted, or even that it is desirable, is not to say that it is constitutionally required.”). We therefore hold that the RFRA, as applicable to federal law, does not violate the Establishment Clause of the Constitution.
Having found the portions of the RFRA applicable to the federal government and federal law constitutional, we have little difficulty finding those portions severable from the RFRA’s unconstitutional sections. A court must sever the invalid parts of a statute from the valid parts “unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.” Chadha, 462 U.S. at 931-32, 103 S.Ct. 2764 (internal quotation marks, citations, and alterations omitted); Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) (“A court should refrain from invalidating more of the statute than is necessary.”) (alteration omitted). We know of no evidence that Congress would not have applied the RFRA to the federal government unless it could also be applied to state and local governments. We therefore hold the portion of the RFRA applicable to the federal government severable from its unconstitutional portions. See Kikumura, 242 F.3d at 959-60 (finding federal portions of the RFRA severable); In re Young, 141 F.3d at 859 (same).
CONCLUSION
The RFRA is an amendment to the ADEA and, as such, is constitutional. The parties have not briefed the issue of how it impacts the merits of this case. The district court did not apply the RFRA, relying instead on the “ministerial exception” to the ADEA. We believe that, while the RFRA’s application is a matter of law, it would be appropriate to hear from the district court first, rather than seek yet further briefing in this court. We therefore vacate and remand for reconsideration under the RFRA standards.

. Appellant initially moved for a preliminaiy injunction requiring appellees to restore his active status, but he withdrew the motion after the NYAC and Lyght appointed another clergy member to fill his vacant position.

. The district court did not address this issue, but because it raises purely legal questions, *101 we do so here. See McGinty v. New York, 251 F.3d 84, 90 (2d Cir.2001) (addressing question not decided by district court where facts were undisputed and legal question was briefed).

. Section 2000e-5(f)(l) provides in pertinent part:
If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

. No court appears to have addressed the issue squarely, but some suggestive caselaw exists. Some courts seem to have assumed without discussion that the RFRA may be asserted as a defense by a private party against another private party. See, e.g., Guinan v. Roman Catholic Archdiocese of Indianapolis, 42 F.Supp.2d 849, 853 (S.D.Ind.1998) (permitting the private party defendant to assert a RFRA defense but rejecting it after first finding that the ministerial exception negated the need to discuss the RFRA defense); Urantia Found., v. Maaherra, 895 F.Supp. 1335, 1336-37 (D.Ariz.1995) (permitting the defendant to raise a RFRA defense but rejecting it because the defendant did not contest the constitutionality of the trademark and copyright laws in general or as applied to her). Bankruptcy courts have also generally permitted a private-party defendant to assert a RFRA defense against a Chapter 7 trustee. See Christians v. Crystal Evangelical Free Church (In re Young), 82 F.3d 1407, 1418-19 (8th Cir.1996) (permitting a defendant to assert a RFRA defense and recover debtors’ tithes to the church because "the government action in question meaningfully curtails, albeit retroactively, a religious practice"), vacated, 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997), reaff'd, 141 F.3d 854 (8th Cir.1998); see also In re Tessier, 190 B.R. 396 (Bankr.D.Mont.1995); Newman v. Midway Southern Baptist Church (In re Newman), 183 B.R. 239 (Bankr.D.Kan.1995), aff'd, 203 B.R. 468 (D.Kan.1996). A bankruptcy trustee is arguably "acting under color of law” and therefore falls within the RFRA’s definition of “government." 42 U.S.C. § 2000bb-2(l). United States trustees are part of the executive branch and protect the interests of the United States in the liquidation. See 28 U.S.C. § 586(a); 11 U.S.C. §§ 701(a)(1), 703(b)-(c) and 704(9); In re Schoenewerk, 304 B.R. 59, 62-63 (Bankr.E.D.N.Y.2003).

. The RFRA's stated purposes include "re-stor[ing] the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).” 42 U.S.C. § 2000bb(b)(l). The Supreme Court noted that "Congress enacted RFRA in direct response to the Court's decision in” Smith. City of Boerne v. Flores, 521 U.S. 507, 512, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

. We find no principled constitutional distinction between Congress’s ability to amend statutes on an individual basis and its power to do so in a wholesale manner through an enactment such as the RFRA. See Guerrero, 290 F.3d at 1221 n. 18.

. Appellant also argues that Boeme explicitly invalidated all of the RFRA due to separation of powers concerns. Specifically, appellant relies upon the statement that the "RFRA contradicts vital principles necessary to maintain separation of powers and the federal balance.” Boeme, 521 U.S. at 536, 117 S.Ct. 2157. The argument is entirely unconvincing. The quoted language simply explained why Congress could not enact the RFRA pursuant to its Section 5 power. The quoted phrase reads in full as follows: "Broad as the power of Congress is under the Enforcement Clause of the Fourteenth Amendment, RFRA contradicts vital principles necessary to maintain separation of powers and the federal balance.” Id. This analysis has no application to any separation of powers concerns raised by the RFRA's enactment and application to the federal government under the Necessary and Proper Clause. See Guerrero, 290 F.3d at 1220 (Boeme’s "discussion of the separation of powers doctrine was entirely within the framework of its section 5 analysis — not an independent rationale.”).